FIRST NATIONAL BANK IN OSHKOSH, Respondent, v. SCIESZINSKI and another, d/b/a AAA Midwest Home Improvement Company, Appellants.*

*November 26—December 20, 1963.*

---

* Motion for rehearing denied, with $25 costs, on March 3, 1964.

For the appellants there was a brief and oral argument by *Cleland P. Fisher* of Janesville.

For the respondent there was a brief by *Williams, Williams & Meyer* of Oshkosh, and oral argument by *Harry E. Meyer*.

DIETERICH, J. The bank commenced the instant action on March 17, 1962, to require defendant AAA to purchase back the Palmer note under the terms of a dealer/contractor certificate which was executed as part of a transaction between AAA and the bank. Paragraph 4 of the complaint alleges the following:

"That at the time said defendants discounted said note with plaintiff and obtained said $1,700 from plaintiff, and as part of the same transaction, said defendant partnership contracted in writing with plaintiff in manner and form as follows:

" 'As consideration for the purchase of the buyer's note, the undersigned warrants and certifies that: (1) the work or material as specified above constitute the entire consideration for which the loan is made . . . (3) this contract contains the complete agreement with the borrower. (4) The borrower has not been given or promised a cash payment . . . as an inducement to consummate this transaction.

" 'If any of the above representations prove incorrect, the undersigned agrees to promptly repurchase the note from the bank.'

"That the foregoing repurchase agreement immediately above quoted was dated and executed February 22, 1960, and subsequently, and without knowledge on the part of the

plaintiff at any of the times herein mentioned of the sub rosa understanding between said defendants and said Palmers, the defendants paid said Palmers the sum of $500 in cash and took their receipt therefor, all in violation of defendant partnership's written agreement with plaintiff as quoted above.

"That thereupon said defendants Scieszinski became obligated to repurchase the aforesaid note from plaintiff."

AAA, by its amended answer, alleged that at the same time it entered into the improvement contract with Palmers, an agreement was made to the effect that Mr. Palmer would purchase paint and apply the wood siding to his home in consideration for which AAA would pay him $500.

The sole issue on this appeal is whether the finding of the trial court that defendants promised a cash payment to Palmers as an inducement to consummate the transaction is supported by the evidence.

The record reveals the following facts. On January 29, 1960, Eugene Palmer and his wife entered into a contract with AAA for certain improvements to be made on the Palmer home. The contract price was $1,700, payable in sixty monthly instalments. The contract contained a provision to the effect that there was no understanding between the parties, verbal or otherwise, other than that contained in the written agreement. Upon completion of the work, Palmer and his wife executed a promissory note to AAA in the sum of $2,210.40, payable in sixty monthly instalments. AAA discounted the note by indorsing it over to the bank, and received $1,700 from the bank in return. As part of the transaction, the bank required a certificate of completion of the work performed by AAA for the Palmers. The certificate was signed by Eugene and Cecilia Palmer and contained the following clause:

"We further certify that no cash payment has been given or promised us nor have we been guaranteed any cash bonus

or commission on future transactions as an inducement to consummate this transaction."

At the bottom of the certificate of completion appears a dealer/contractor certification, signed on behalf of AAA by Tom Scieszinski, which provides as follows:

"As consideration for the purchase of the buyer's note the undersigned warrants and certifies that:
"(1) The work or material as specified above constitute the entire consideration for which the loan is made . . . (3) This contract contains the complete agreement with the borrower (4) The borrower has not been given or promised a cash payment nor has the borrower been guaranteed any cash bonus or commission on future transactions as an inducement to consummate this transaction . . .
"If any of the above representations prove incorrect, the undersigned agrees to promptly repurchase the note from the bank."

Palmer made monthly payments to the bank under the terms of the note for fifteen or sixteen months, and in May, 1961, the bank received notice that he had been adjudged bankrupt. The balance due on the note at that time was $1,454.80.

The testimony at the trial was as follows: Eugene Palmer testified that when he first met with Tom Scieszinski, the AAA sales representative, he told Scieszinski that he could not afford any improvements because he had a large number of unpaid bills. Scieszinski later denied that any such conversation took place. Palmer stated that he told Scieszinski that he wanted to do some of the work himself, and that Scieszinski told him that the contract price would include the cash Palmer was to receive to pay off his bills. Palmer testified that when he signed the completion certificate, an AAA representative gave him a promissory note for $500, and that the representative later picked up the note from Mrs. Palmer and gave her $500 cash. Palmer used the money

to pay bills, buy clothes, etc., except for $30 which he used to purchase paint and supplies for completing the siding job. According to Palmer, the promissory note given him by AAA was a simple IOU for $500, written on a plain piece of paper. On cross-examination, Palmer admitted telling a bank official over the telephone that no cash payments were offered him as an inducement to enter into the contract with AAA, and that he was aware of the contents of the certification of completion when he signed it. Palmer also stated that he spent approximately twenty-two–twenty-four hours painting and installing siding on his home.

One of the exhibits admitted into evidence at the trial was a memorandum claimed by AAA to be the note given to the Palmers upon completion of the work. The memorandum, written in ink on a small piece of white paper, read as follows:

"AAA Midwest Home Improvement Company agrees to pay Eugene Palmer, Caledonia, Wisconsin the sum of $500 for the purpose of buying paint and applying the wood siding to his home and painting home and apply stone to interior of home. /s/ Tom Scieszinski."

Palmer denied that this was the note given him by the AAA man and testified that the note he received was a plain IOU or promissory note for $500.

Mrs. Cecilia Palmer testified that she and her husband were "offered" $500 by AAA to pay their bills and to "make things easier" for them. She stated that at the time she and Palmer signed the improvement contract the AAA representative told them that the $500 was to pay off their bills. According to Mrs. Palmer the note for $500 given them by the defendants was written on a yellow piece of paper.

Tom and Edward Scieszinski, co-partners in AAA, testified that the $500 was not an inducement to Palmer to enter into the contract. Tom Scieszinski, Edward Scieszinski, and

William Basch, testifying on behalf of AAA, all stated that $500 was the reasonable value of the work performed by Palmer.

Sam Alexander, the bank official who personally handled the transaction for the bank, testified that he understood at all times that Palmer was to do some of the work in connection with the improvement contract, although there was no intimation that Palmer was to receive anything back from AAA.

The trial court announced its decision from the bench, stating that the allegations of the complaint had been proved and that judgment should be entered accordingly. The court also stated that:

"Even assuming the defendants' version of the testimony is correct (and this, the Court might add parenthetically, would strain its credulity beyond the breaking point) the fact remains that the certification to the bank, of the defendants, was untrue in a material respect, to the prejudice of the bank; and that therefore, under the terms of the agreement with the bank, the bank is entitled to compel the defendants, to repurchase the note back, with interest as specified."

Among the trial court's findings of fact were the following: That the AAA representative promised, in writing, a cash payment of $500 to the Palmers as an inducement to consummate the transaction; that defendants paid said $500 in cash to the Palmers and reclaimed the written promise to pay; and that the certification given by AAA to the bank in consideration for the bank's purchase of the note was untrue in a material respect in that the certification states that the contract contains the complete agreement and that the Palmers had not been given or promised a cash payment. The trial court concluded that AAA's false certification to the bank entitled the bank to compel AAA to repurchase the

note back for the amount due plus interest under the terms of the contract.

The appellants' argument on appeal is that the finding of the trial court that AAA promised a cash inducement to the Palmers is unsupported by the evidence, and that therefore there was no breach of contract authorizing the bank to recover the funds paid to AAA. Appellants contend that the $500 paid to Mr. and Mrs. Palmer was not in the nature of an inducement, but rather that it was merely payment for services rendered, much the same as they would pay any subcontractor who did work for them. They set forth the certificate of completion signed by the Palmers which states that no cash payment had been given or promised as an inducement to consummate the transaction, as well as testimony to the effect that Palmer did do some work on the house, which in their opinion was reasonably worth $500. They also rely upon Palmer's testimony that he told a bank official over the telephone that no cash payment had been offered him as an inducement.

However, there was also testimony by Palmer to the effect that he told the AAA representative that he could not afford to have the work done, and that the representative told him that the contract would cover everything, including cash to pay off his bills. Mrs. Palmer testified that the purpose for which they received the $500 was to pay off their many outstanding bills, and she denied that the money was in payment for work to be done by her husband. While the bank official testified that he knew that Palmer was to do some of the work on his home, he also stated that he had no intimation that Palmer was to receive anything back from AAA. Palmer admitted telling a bank official over the telephone that he had not received any promise or payment as inducement to consummate the transaction, but he also testified that when he was given the $500 by AAA he was told not to mention anything about it, because it was "bad busi-

ness practice." Tom Scieszinski denied any such discussion with Palmer. The contract between Palmer and AAA for the home improvements is entirely silent as to any payment to Palmer for work he might perform, and Palmer testified that the AAA representative never told him that he would be paid for any work he might do. Palmer stated that the only reason he wanted to do the siding work himself was that he "didn't want the siding on yet" because he had to make some changes in the windows first.

The appellants contend that any testimony to the effect that the money paid to Palmer was to enable them to pay off their creditors is not admissible under the parol-evidence rule for the reason that such testimony is contrary to the written memorandum executed by Scieszinski and delivered to Palmer. Appellants cite 9 Wigmore, Evidence (3d ed.), p. 76, sec. 2425, and several Wisconsin cases for the proposition that when a jural act is embodied in a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act. Assuming that the rule advanced by the appellants is correct, it has no application to the instant action, for whatever effect the testimony might have upon the memorandum or the improvement contract between Palmer and AAA, it in no way attempts to alter or vary the terms of the contract between the bank and AAA, which is the basis of the litigation. In any event, the memorandum placed in evidence by the defendants and purported to be the note given to the Palmers by AAA, is signed only by AAA representative Tom Scieszinski, and Palmer specifically denied that this memorandum was the note he received from the defendants.

It is a well-established rule that findings of fact by a trial court are not to be set aside unless they are contrary to the great weight and clear preponderance of the evidence, and it is not sufficient for reversal that a contrary finding might

have been made with evidence in its support. *Weber v. Kole* (1959), 7 Wis. (2d) 107, 110, 95 N. W. (2d) 784; *Reimer v. Reimer* (1959), 7 Wis. (2d) 146, 147, 96 N. W. (2d) 375.

The statement in the trial court's memorandum decision as to the incredulity of the defendants' version of the testimony indicates that the court chose to believe the Palmers' testimony, which it had a right to do, for where there is a dispute in the testimony the trier of fact is the judge of the weight and credibility to be accorded to the testimony of the witnesses. *Estate of Fillar* (1960), 10 Wis. (2d) 141, 147, 102 N. W. (2d) 210.

We determine that the trial court's findings were not against the great weight and clear preponderance of the evidence and therefore we affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.