Louis J. Capozzoli, J.
This is an action for a separation, brought by the plaintiff wife against the defendant on the grounds of cruelty, abandonment and nonsupport. The defendant, as an affirmative defense, and by way of counterclaim for an annulment of their marriage, attacks the validity of the plaintiff’s divorce from a previous husband, one Seymour Blair. The divorce was granted by the Circuit Court of Montgomery County, State of Alabama, on the 3d day of March, 1955. Thereafter, on the 21st day of May, 1957, the plaintiff and defendant were married in Hot Springs, Arkansas. This action was commenced by the plaintiff in 1962.
The crux of the defendant’s affirmative defense and counterclaim is found in his claim that the judgment rendered in the State of Alabama is invalid because plaintiff was not a bona fide resident of that State when she commenced the action for divorce and, therefore, the court in Alabama did not acquire jurisdiction over the parties. The plaintiff disputes the defendant’s contention and urges, amongst other things, that the Alabama decree obtained by her is entitled to full faith and credit in the State of New York and, therefore, her divorce is valid so as to make legal the marriage between the parties.
As far back as the year 1818, in the case of Hampton v. McConnel (3 Wheat. [16 U. S.] 234, 379), the court said: “ The judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced, and whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States.” This principle has been followed continuously up to the present time.
*974 In Johnson v. Muelberger (340 U. S. 581, 587) the court said: “It is clear * * * that, under our decisions, a .state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has .been personally served or who has entered a personal appearance from collaterally attacking the decree. Such an attack is barred where the party' attacking would not be permitted to make a collateral attack in the courts of the granting state.” It is apparent, therefore, by virtue of what was stated in Johnson v. Muelberger (supra) that a collateral attack on a divorce granted by a State which prohibits such an attack cannot be made in any other State.
In the case of Williams v. North Carolina (325 U. S. 226, 232) the court said: “the decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicile is a jurisdictional fact. To permit the necessary finding of domicile by one State to foreclose all States in the protection of their social institutions would be intolerable.”
In Halvey v. Halvey (330 U. S. 610, 614) the court said: ‘ ‘ But a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered. [Citing cases.] If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause.”
The Alabama statute which sets forth the particular requirements for the exercise of jurisdiction by the Alabama courts over a divorce case is found in section 29 of title 34 of the Code of Alabama of 1940, as amended, which provides: “ When the defendant is a nonresident, the other party to the marriage must have been a bona fide resident of this state for one year next before the filing of the bill, which must be alleged in the bill and proved; provided, however, the provisions of this section shall not be of force and effect when the court has jurisdiction of both parties to the cause of action.”
This statute was passed upon by the Supreme Court of Alabama in Jennings v. Jennings (251 Ala. 73, 74-75) and the court specifically stated:
“ In effect so far as applicable to the facts in this case, the statute provides that when the defendant is a nonresident of this state, the complainant need not be a resident of this state when the court has jurisdiction of both parties. * * *
“ Jurisdiction, which is the judicial power to grant a divorce, is founded on domicile under our system of law. William v. *975 North Carolina, 325 TI. S. 226 * * *. This is true because domicile in the state gives the court jurisdiction of the marital status or the res which the court must have before it in order to act. * * * Furthermore it is recognized that unless one of the parties has a residence or domicile within the state, the parties cannot even by consent confer jurisdiction on the courts of that state to grant a divorce.
<<<# * * The principle dominating the subject is that the marriage relation is so interwoven with public policy that the consent of the parties is impotent to dissolve it contrary to the law of the domicile * * *. ’ Andrews v. Andrews [188 U. S. 14]. * * *
“ An act to be valid must be within the legislative jurisdiction of the enacting state. * * * Here the statute seeks to act on a status which is beyond the boundaries of the state. That it cannot do.”
In a later case, Gee v. Gee (252 Ala. 103, 105), in commenting on the earlier case of Jennings v. Jennings {supra), the Supreme Court of Alabama said: ‘ ‘ In that case both parties were nonresident of Alabama. Therefore, we held that the proviso did not authorize the court in this State to grant a divorce. The parties cannot by consent confer such jurisdiction, nor can the legislature do so by an act, when the res is not within the power of State authorities.”
Later in the opinion the court said (p. 105):
‘ ‘ By residence here we mean domicile, which embraces citizenship. It is firmly established by our decisions that residence in our divorce statutes means domicile. * * *
“It is not sufficient to make the allegation without satisfactory proof of such citizenship. * * * There must not only be evidence of such domicile, but it must be sufficient to satisfy the court of the truth in fact of such domicile. Colorable residence for that or any other temporary purpose will not be sufficient.”
In Levine v. Levine (262 Ala. 491, 495), in the course of its opinion the court said: ‘ and we in no way impinge on our well-settled rule that the Alabama courts have no jurisdiction over the marital status of the parties if neither was domiciled in Alabama. * * * Such jurisdiction could not be conferred on the court even with the parties’ consent.”
Therefore, it is essential that this court, in the action before it, examine the evidence for the purpose of determining whether the plaintiff wife did establish a bona fide residence in Alabama when she brought divorce proceedings against her former husband.
*976 ’ The plaintiff claims that, although she had heen a New York State resident for many years prior to going to Alabama, she went to Alabama, not for the specific purpose of obtaining the divorce only, but also to establish a bona fide residence to start life anew in that State. She points to the fact that she obtained a library card while in Montgomery, Alabama, where the proceedings were brought, opened a bank account and also claims that she investigated various pieces of real estate in the hope of starting a dancing school in that city.
It is important to consider that the plaintiff went to Alabama from New York State shortly after she had worked out a financial settlement between herself and her earlier husband, Blair, in a separation action which was pending in the New York State Supreme Court. She arrived in Alabama on February 22, 1955 and immediately went to the office of her Alabama lawyer, where she executed the necessary papers to commence the divorce action. Her then husband was not subject to process-in Alabama as he was a New York resident and did not go to Alabama. However, he acknowledged receipt of the complaint and executed an answer and waiver, in which he consented that all further steps in that action be taken without further notice to him. Examination of the complaint in that action, which is an exhibit before the court, discloses that she swore to the allegations in that complaint, before a notary public, on February 22, the very day she arrived in that city. She registered at a hotel in Montgomery, remained in Montgomery until March 3, when she obtained her decree and, on the following day, March 4, she went to Florida, for a vacation and remained there until March 21, when she returned to Montgomery. She remained there for 14 days, until April 4, when she left for New York. She has never been in Alabama since. Her contention that she had a bona fide Alabama domicile must be weighed' in the light of the total factual situation presented by this record, including her registration with the Board of Elections to vote at the New York City elections held in 1961, when she stated, under her signature, that she had been a resident of New York State for 24 years.
An examination of the case of Mascioli v. Mascioli (6 Misc 2d 846, affd. 6 A D 2d 1016) discloses that the factual situation in -support of the contention of the plaintiff husband that he had acquired a domicile in Arkansas was much stronger than the case at bar. The evidence adduced by the plaintiff husband tended to show, amongst other things, that he went to Arkansas because of arthritis, that he filed his Federal income tax return for 1947 and 1948 in that State, that he applied for and received *977 unemployment insurance compensation in that State, that he had also made application for and received a driver’s license in the State. And, yet, on the over-all picture, the New York court found that the alleged domicile in Arkansas was not in good faith, hut, rather, the presence of the plaintiff there was for the purpose of bringing the divorce action. Certainly the facts in the case at bar, on which the plaintiff relies, are weaker.
In any event, although this court is mindful of the rule that the burden of undermining the validity of a divorce granted by a sister State rests heavily upon the assailant, it is nevertheless convinced, from the total evidence adduced at the trial, that neither the plaintiff, nor her prior husband, had ever been domiciled within the State of Alabama, and that the Alabama divorce decree was obtained by the plaintiff, with the consent and acquiescence of her then husband, by means of a false statement on the part of the plaintiff, in which she claimed to be a resident of the State of Alabama. It is clear that under Alabama law the divorce decree is invalid and could not successfully resist a lawful attack ag’ainst it.
In Smith v. Smith (247 Ala. 213, 218), in discussing the question of collateral attack the court said: The question may be raised collaterally, and this is done on the instant pleading, and by argument of the appellee’s counsel. [Citing cases.] ”
In the case of Hartigan v. Hartigan (272 Ala. 67) the principle of the necessity for a bona fide residence as a prerequisite to the acquisition of jurisdiction by the Alabama courts was reaffirmed. In this last case, six years after the divorce was granted, the husband, who was the defendant in the earlier divorce case, applied to the Alabama court for a reduction of the alimony. In the course of an off-the-record discussion before the Judge, it was disclosed that neither party had ever resided in Alabama and that the wife had gone to Alabama for the sole purpose of securing a divorce. The court, on its own motion, ordered the six-year-old divorce decree to be set aside for lack of jurisdiction, despite the fact that the husband had remarried since that divorce and had a child by that subsequent marriage.
After the decision in Hartigan v. Hartigan (supra) the Alabama courts considered the question of a collateral attack in the case of Aiello v. Aiello (272 Ala. 505).
In the latter case the court held that a husband’s complaint, seeking to declare his 1950 marriage null and void on the ground that a 1948 decree divorcing wife from an earlier husband had been obtained by wife’s fraud as to residence, would not be demurrable if complaint could be amended to show that the suit had been brought within one year after husband’s discovery *978 of alleged fraud and that husband had been reasonably diligent in making such discovery. On the question of jurisdiction the court said (p. 511): “ The lower court has jurisdiction of the parties, complainant being a citizen of Alabama, and authority to annul the marriage, even though the ceremony was performed in another state. [Citing cases.] If complainant is ‘ a bona fide resident citizen of Jefferson County, Alabama,’ as he alleges, then the Circuit Court of Jefferson County, in equity, has jurisdiction to declare his purported marriage void, if the marriage is void and complainant has not lost the right to maintain the instant bill; and this is so although the purported marriage was celebrated in New Jersey.”
From the above cases it is clear that Alabama does allow a collateral attack on the divorce obtained by the plaintiff. This same question has already been passed upon by New York courts and the same conclusion has been reached. (Rosenbluth v. Rosenbluth, 34 Misc 2d 290; Weisner v. Weisner, 18 A D 2d 997; subsequent decision in same case, Weisner v. Weisner, decision of Mr. Justice Nathan, N.Y.L.J., Feb. 13, 1964, p. 17, col. 5; Glasser v. Glasser, decision of Mr. Justice McCaffrey, N.Y.L.J., Nov. 12, 1963, p. 13, col. 6.) Also, see, Klarish v. Klarish (19 A D 2d 170) and Phillips v. Phillips (15 Misc 2d 884) which, although they involved Virgin Islands and Georgia divorce decrees respectively, did discuss the requirements for a permissible collateral attack upon ■ divorce decrees of other States.
In the case of Weisner v. Weisner (18 A D 2d 997, supra) the Appellate Division, in a memorandum decision considering an Alabama divorce, said: “ A third person, not a party to a divorce decree rendered in another State, may collaterally attack the validity of such a decree in this State if the State that rendered the decree permits such a collateral attack.”
The plaintiff vigorously contends that the Alabama decree was rendered in a proceeding in which both parties appeared, and that, since the opportunity to contest the jurisdictional issue existed, the decree is conclusive and must be respected in New York, even as against those who were not parties to the proceedings. This contention is directly contrary to the holding in Rosenbluth v. Rosenbluth (supra) and Weisner v. Weisner (supra). It is also contrary to the language of the court in Williams v. North Carolina (supra) which language has been hereinabove quoted.
The plaintiff overlooks the fact that there is an important distinction between a jurisdictional issue, decided after full and fair litigation, in which the issue is sincerely disputed, and a *979 conclusion reached by the court resulting from collusion between the parties which perpetrates a fraud upon the court. (Durfee v. Duke, 375 U. S. 106.) The last-cited case did not involve a divorce. However, the court was called upon to consider the question of jurisdiction settled in one State as binding upon every other State, and the court said (p. Ill): “ there emerges the general rule that a judgment is entitled to full faith and credit — even as to questions of jurisdiction — when the second court’s inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.”
Later, (p. 113), the court quotes from Stoll v. Gottlieb (305 U. iS. 165) as follows: “In the words of the Court’s opinion in Stoll v. Gottlieb, supra, ‘ We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction ’.”
Surely plaintiff cannot seriously contend that, as between herself and her earlier husband, Blair, there was a bona fide contest of any issue, much less on the question of jurisdiction. The divorce was obtained by mutual consent and the plans therefor were laid in New York following the termination of the separation action by the written agreement of separation. In fact, the attorney who represented the earlier husband, Blair, in the separation case, testified at the trial of the case at bar that his firm had recommended to both the plaintiff and her then husband the particular lawyers who represented them in the Alabama divorce proceedings. Obviously, the plaintiff and Blair were not engaged in a bona fide contest on the question of jurisdiction. On the contrary, after a careful consideration of the total evidence in the case, this court is convinced that jurisdiction was exercised by the Alabama courts over the earlier divorce action as a result of a fraud perpetrated by the plaintiff, in her claim of being a bona fide resident of that State, in collusion with her then husband.
The court has also considered the contention of the plaintiff that this counterclaim is barred by the Statute of Limitations of Alabama and finds no merit in it. Whatever the Statute of Limitations may be in Alabama it does not bind the New York courts. Provisions of a general Statute of Limitations are not substantive in nature, they are merely procedural and have no force outside of the State in which they are adopted. (See Wells v. Simonds Abrasive Co., 345 U. S. 514.) In the last-cited case (pp. 516-517) the court said: “ Long ago, we held that applying *980 the statute of limitations of the forum to a foreign substantive right ditj. not deny full faith and credit [Citing cases]. * * * Our prevailing rule is that the Full Faith and Credit Clause does not compel the forum state to use the period of limitation of a foreign state.”
As a matter of fact, the case of Hartigan v. Hartigan (supra) in effect indicates that there is no Statute of Limitations applicable in cases where the fraud is perpetrated on the court. (Weisner v. Weisner, decision of Mr. Justice Nathan, supra.) In this last-cited case the court said: “ The Hartigan case declared divorces based upon fraud perpetrated on the court are void, prior to any harm to or action by the second spouse. Against the attack on such divorces the Hartigan case also makes clear there is no statute of limitations in Alabama, nor is there such a bar to this action in New York. ['Citing authorities] ”.
In conclusion, since the plaintiff’s former husband, Blair, was alive and his marriage to the plaintiff was in full force when she married the defendant herein, in Arkansas, this later marriage is void and there is no estoppel against the defendant, nor is laches a defense. (Landsman v. Landsman, 302 N. Y. 45; Duffy v. Duffy, 23 Misc 2d 268.)
The plaintiff’s action for a separation must fail and, accordingly, judgment is directed in favor of the defendant, dismissing the separation action of the plaintiff.
There remains the final question as to whether, under the circumstances disclosed, this case calls for the application of the court’s discretion to award plaintiff support and maintenance and additional counsel fee and expenses, in accordance with sections 236 and 237 of the Domestic Relations Law. (Johnson v. Johnson, 295 N. Y. 477.)
Accordingly, and pursuant to the provisions of the above-cited sections of the Domestic Relations Law, a hearing will be held before this court on the 1st day of April, 1964, at 11:00 a.m., in Part XXV of this court, at which defendant will appear, together with all his books, records and accounts relating to his income, assets and property for the years 1960 to date. Suitable award will thereupon be made to the plaintiff, as provided by law, and in accordance with the evidence adduced.
Judgment is directed for the defendant on his counterclaim nullifying the marriage of the parties. Plaintiff’s action for separation is dismissed.
All motions upon which decision was reserved, except for the relief herein granted, are denied.
*981 Upon the conclusion of the hearing of April 1, 1964, findings of fact and conclusions of law, embodying all of the above, shall be submitted to the court, together with a judgment. In the meantime, and pending the further order of the court, plaintiff: is to continue to receive alimony in accordance with the prior orders of this court.